## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| JAY KRUISE, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | **Case No. 1:16-cv-830** |
| | ) | |
| ERIC K. FANNING, | ) | |
|     Defendant. | ) | |

### <u>MEMORANDUM OPINION</u>

Plaintiff Jay Kruise, a computer technician with the Army, claims that his supervisors' blatant lies regarding his mental health cost him his security clearance and his job. Although the agency[1] eventually restored his security clearance and Kruise returned to his job, he claims that the suspension of his security clearance violated (i) Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, (ii) the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, (iii) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, (iv) the Back Pay Act, 5 U.S.C. § 5596, and due process. The agency seeks dismissal of his amended complaint on jurisdictional grounds based on settled Supreme Court and Fourth Circuit precedent that forecloses challenges to the merits of security clearance decisions. For the reasons that follow, the agency's motion to dismiss must be granted.

---

[1] Defendant in this action is Secretary of the Army Eric K. Fanning. For convenience, the defendant will be referred to throughout as "the agency."

# I.

Plaintiff Jay Kruise was born in Laos and immigrated to the United States when he was 10 years old. After serving in the United States Navy and receiving an honorable discharge, he attended college, received a degree in computer network technology, and began working for the government as a computer technician. In college he was diagnosed with depression and other mental illnesses related to his military duty.

After working in Germany for several years, the agency assigned plaintiff to Tobyhanna Army Depot in Pennsylvania in 2003, where he allegedly experienced daily acts of racial discrimination. The agency reassigned him to Holland in April 2004, and then to Germany in 2005. He alleges that he also suffered racial discrimination on those assignments, which contributed to his depression and other mental health problems. In May 2006, plaintiff filed an Equal Employment Opportunity ("EEO") complaint against his supervisor, Eleanor Hendricks, alleging discrimination on the basis of race, national origin, and retaliation for earlier EEO activity. Plaintiff later emailed Hendricks to tell her that he had trouble concentrating at work due to harassment, his EEO complaint, and his medical problems. Plaintiff met with his supervisors in July 2006, and they promised to look into an accommodation for him if he provided a letter from a doctor. Plaintiff's psychologist, Dr. Glenn Koppel, submitted that letter to the agency in September 2006. In his letter, Dr. Koppel stated that plaintiff suffered from depression partly because of his work situation, and recommended that plaintiff be transferred to a place where he could work without fear of harassment.

After receiving Dr. Koppel's letter, plaintiff alleges that agency officials familiar with his EEO complaint met with Hendricks. According to plaintiff, Hendricks and those officials agreed to use plaintiff's mental health disorder as a "loophole" to remove him without following normal

procedures.  In particular, plaintiff alleges that Hendricks knowingly gave false information to

Darrell Bright, the Regional Chief Information Officer in Europe, to show that plaintiff posed a

security threat.  Plaintiff further alleges that Bright also received a copy of Dr. Koppel's

evaluation.  Bright, allegedly making and relying on numerous false representations,[2] then

recommended to plaintiff's commanding officer, Colonel Pinkston, the immediate suspension of

plaintiff's security clearance.  Shortly thereafter, on September 14, 2006, Colonel Pinkston

suspended plaintiff's security clearance.  Four days later, the agency sent plaintiff a letter

informing him that he would be suspended from his job without pay until the U.S. Army Central

Personnel Security Clearance Facility could make a final determination about his security

clearance.  Plaintiff responded that he was fit for duty, but he was nonetheless indefinitely

suspended from his job in November 2006.

Believing that he had been wrongly suspended, plaintiff filed an appeal with the Merit

Systems Protection Board ("MSPB").  He also filed an EEO complaint in January 2007, alleging

that the agency unlawfully discriminated against him when it suspended his security clearance.

That EEO complaint was dismissed because it asserted the same issues as were raised in his

MSPB appeal.

The MSPB affirmed plaintiff's suspension in February 2007, but it did not address

plaintiff's discrimination claims for lack of jurisdiction.  As a result, plaintiff was allowed to file

another EEO complaint to pursue his discrimination claims.  The agency eventually conducted

an investigation for that EEO complaint and issued findings which plaintiff embraces in the

instant action because they allegedly support his discrimination claims.  For example, in his

---

[2] The complaint alleges that Bright received false information from Hendricks.

complaint plaintiff cites the finding that the agency suspended his security clearance based on the perception that he was disabled.[3]

In July 2007, an agency psychologist examined plaintiff and concluded that he did not pose a security risk. Based on that examination, the Central Personnel Security Clearance Facility restored plaintiff's security clearance. Plaintiff returned to his job and was transferred back to Pennsylvania, but at a lower grade and pay scale.

For reasons that are not clear from plaintiff's amended complaint, his EEO complaint was never finally adjudicated. He filed this lawsuit in July 2015 in the United States District Court for the District of Columbia, and the case was transferred to this district pursuant to 28 U.S.C. § 1406(a).[4] In his amended complaint, plaintiff alleges that the agency unlawfully discriminated against him based on his disability, or perceived disability, and retaliated against him in violation of Title VII, the Rehabilitation Act, and the ADA. He further alleges that the agency violated his right to due process when it suspended his security clearance and that it violated the Back Pay Act. Plaintiff has also moved to file a second amended complaint.

The agency filed a motion to dismiss plaintiff's amended complaint for lack of subject matter jurisdiction under Rule 12(b)(1), Fed. R. Civ. P. The agency contends that plaintiff's Title VII, Rehabilitation Act, ADA, and due process claims implicate the merits of the agency's security clearance decision, and therefore must be dismissed for lack of subject matter jurisdiction based on Supreme Court and Fourth Circuit precedent. The agency further contends

---

[3] Contrary to plaintiff's allegation that the agency violated due process by failing to consult a psychiatrist before suspending plaintiff, the EEO investigation also found that the agency was aware of Dr. Koppel's psychiatric evaluations when it suspended plaintiff.

[4] Section 1406(a) provides that the "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

that plaintiff's Back Pay Act claim must be dismissed for lack of jurisdiction because it is barred

by the Civil Service Reform Act of 1978.  The agency also contends that plaintiff's request to

file a second amended complaint should be denied as futile because the proposed complaint

would not cure the jurisdictional defects with his claims.

## II.

Plaintiff bears the burden of showing that subject matter jurisdiction exists over his

claims, and they must be dismissed if he cannot satisfy that burden.  *See Lovern v. Edwards*, 190

F.3d 648, 654 (4th Cir. 1999).  His Title VII and Rehabilitation Act claims are addressed first,

followed by his ADA, due process, and, finally, his Back Pay Act claims.

## A.

Analysis of plaintiff's Title VII and Rehabilitation Act claims properly begins with the

Supreme Court's decision in *Department of the Navy v. Egan*, in which a Navy employee sought

MSPB review of the denial of his security clearance.  484 U.S. 518, 522 (1988).  The Supreme

Court held that the MSPB lacked the authority to review "the substance of [the] underlying

decision to deny or revoke a security clearance in the course of reviewing" an adverse

employment action.  *Id.* at 520, 530.  The Supreme Court grounded that holding in the

separation-of-powers principle that the Constitution vests "the executive power" in the President

and makes the President the "Commander in Chief of the Army and Navy of the United States."

U.S. Const. Art. II §§ 1–2; *Egan*, 484 U.S. at 527.  That "constitutional investment of power,"

which "exists quite apart from any explicit congressional grant," gives the President the authority

to control access to classified information.  *Egan*, 484 U.S. at 527.

Because the "grant or denial of security clearances" is an "inexact science at best" that

involves "[p]redictive judgment[s]" as to an employee's future behavior, the Supreme Court

explained that such "sensitive and inherently discretionary judgment call[s]" must be made by the Executive branch agencies "with the necessary expertise in protecting classified information." *Id.* at 529 (quotation marks omitted). As a result, the Supreme Court held that security clearance decisions are "committed to the broad discretion of the agency responsible, [which] include[s] broad discretion to determine who may have access to it." *Id.* In other words, because "it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence," security clearance decisions are not subject to judicial review absent clear instruction from Congress. *Id.*

Following *Egan*'s command, the Fourth Circuit has repeatedly concluded that "courts are generally without subject-matter jurisdiction" to review security clearance decisions because "a court should not be put in the position of second-guessing the discretionary judgment of an executive agency assessing national security risks." *Hegab v. Long*, 716 F.3d 790, 794 (4th Cir. 2013) (collecting cases). Indeed, the Fourth Circuit has specifically held that *Egan* bars judicial review of Title VII and Rehabilitation Act claims arising out of security clearance decisions. *See Becerra v. Dalton*, 94 F.3d 145, 149 (4th Cir. 1996) ("[T]here is no unmistakable expression of purpose by Congress in Title VII to subject the decision of the Navy to revoke [the plaintiff's] security clearance to judicial scrutiny."); *Guillot v. Garrett*, 970 F.2d 1320, 1326 (4th Cir. 1992) ("We therefore hold that individual security classification determinations are not subject to MSPB or judicial review for alleged violations of section 501 of the Rehabilitation Act of 1973."). Because of controlling precedent, plaintiff's Title VII and Rehabilitation Act claims must be dismissed for lack of subject matter jurisdiction.

Despite this clear, controlling precedent, plaintiff argues that *Egan* does not foreclose his claims because he seeks review only of the decision to *refer* him to Colonel Pinkston, who made the security clearance suspension decision, as opposed to review of the decision itself. According to plaintiff, that distinction makes a world of difference in light of *Rattigan v. Holder*, 689 F.3d 764 (D.C. Cir. 2012). In that case, the plaintiff alleged that FBI officials reported unfounded concerns about him to the FBI's Security Division, prompting a review of his security clearance. *Id.* at 765. The Security Division investigated the concerns, determined that they were unfounded, and never revoked the plaintiff's security clearance. *Id.* at 766. The plaintiff then filed a lawsuit against the FBI, claiming that the decision to refer him to the Security Division was unlawful retaliation against prior protected activity in violation of Title VII. *Id.*

The D.C. Circuit held in *Rattigan* that the plaintiff could pursue his Title VII claim.[5] *Id.* at 766–67. It pointed to the Supreme Court's statement in *Egan* that the decision to "grant or deny a security clearance requires a '[p]redictive judgment' that 'must be made by *those* with the necessary expertise in protecting classified information.'" *Id.* at 767 (emphasis added) (brackets in original) (quoting *Egan*, 484 U.S. at 529). The court reasoned that *Egan* precluded judicial review only of security clearance decisions made by "those" experts actually responsible for dealing with classified information, and therefore did not bar review of decisions made by employees not responsible for security clearance determinations. *Id.* Thus, the court held that "*Egan*'s absolute bar on judicial review covers only security clearance-related decisions made by trained Security Division personnel and does not preclude all review of decisions by other FBI employees who merely report security concerns." *Id.* at 768. In order to address the

---

[5] The D.C. Circuit first held that plaintiff's claims were reviewable in *Rattigan v. Holder*, 643 F.3d 975 (D.C. Cir. 2011), and then vacated that opinion after rehearing and replaced it with the *Rattigan* opinion discussed here.

government's concern that the court's holding would create a chilling effect on employees' reporting potential security clearance violations, the court further held that only claims based on "knowingly false reporting" were subject to judicial review. *Id.* at 770 (emphasis omitted). It stated that the "knowingly false" standard would address the government's concerns while also "preserv[ing] to the maximum extent possible congressionally mandated" employment protections. *Id.* at 771.

Plaintiff argues that his case is on all fours with *Rattigan* because the agency suspended his security clearance based on knowingly false reports from officials who were not security-clearance decision-makers. This argument would be more convincing if *Rattigan* was binding precedent, but unfortunately for him, it is not. Instead, his argument fails because of binding Fourth Circuit precedent that is also on all fours with this case. Specifically, in the *Becerra* decision, the Navy initiated a security clearance investigation into the plaintiff based on information that the Navy allegedly knew or should have known was false. *Becerra*, 94 F.3d at 148. The Navy then suspended the plaintiff's security clearance and discharged him. *Id.* The plaintiff in *Becerra* claimed that the Navy initiated the investigation as retaliation for prior EEO complaints in violation of Title VII. *Id.* Like the plaintiff in this case, the *Becerra* plaintiff argued that the "*instigation* of the investigation into the security clearance as a form of retaliation [was] judicially reviewable." *Id.* at 149. The Fourth Circuit rejected that argument, explaining that the "distinction between the initiation of a security investigation and the denial of a security clearance is a distinction without a difference," because the "question of whether the Navy had sufficient reasons to investigate the plaintiff as a potential security risk" went to the "very heart" of the agency's power to decide who could access classified information. *Id.* The Fourth Circuit concluded that the "reasons why a security investigation is initiated may very well be the same

8

reasons why the final security clearance decision is made," and that "if permitted to review the initial stage of a security clearance determination to ascertain whether it was a retaliatory act, the court would be required to review the very issues that the Supreme Court has held are non-reviewable." *Id.*

Clearly, the *Becerra* decision forecloses plaintiff's attempt to wiggle out from under *Egan* by relying on *Rattigan*'s holding that courts can review for a Title VII violation a knowingly false referral made by an employee not responsible for security clearance decisions. *See Spencer v. Carter*, No. PX 16-161, 2016 WL 4240376, at *3 (D.M.D. Aug. 11, 2016) (stating that "*Rattigan* stands alone in providing narrow judicial review of Executive Branch security clearance decisions," and holding that *Becerra* foreclosed plaintiff's claim that he was the "victim of knowingly false information shared by colleagues"). Despite the *Rattigan* majority's proclamation that security clearance decision-makers could never "be assisted by employees who knowingly report false information — that is, outright lies — about fellow employees,"[6] *Becerra* aligns with the underpinning of *Egan* that security clearance decisions are an "inexact science" that hinge on a variety of factors that courts (and other non-expert entities) are ill-equipped to analyze. *Egan*, 484 U.S. at 528–29 (quotation marks omitted). Although the false information in a referral that launches a security clearance investigation may ultimately prove worthless, it could nevertheless affect an agency's decision about an individual's security clearance in a way that a court may not grasp. *See Kaplan v. Conyers*, 733 F.3d 1148, 1164–65 (Fed. Cir. 2013) ("[T]he intelligence community may view certain disparaging information concerning an employee as a vulnerability which can be used to blackmail or coerce information out of the individual."). As the *Becerra* decision shows, even

---

[6] *Rattigan*, 689 F.3d at 770.

limiting judicial review to the referral stage of a security clearance investigation would ultimately require an examination of the reasons underlying the suspension decision, an examination *Egan* prohibits.

Plaintiff's reliance on *Rattigan* is unavailing for another reason: the *Rattigan* decision itself is unpersuasive. As Judge Kavanaugh observed in his dissent, the *Rattigan* majority's "slicing and dicing of the security clearance process into reviewable and unreviewable portions is nowhere to be found in *Egan*." *Rattigan*, 689 F.3d at 774 (Kavanaugh, J., dissenting). The *Rattigan* majority premised its new rule on a single line from *Egan*: security clearance decisions must be made "by *those* with the necessary expertise in protecting classified information." *Egan*, 484 U.S. at 529 (emphasis added). But in that line the *Egan* Court "was simply contrasting the expertise of agencies with that of outside reviewing bodies, not implying that courts should draw a reviewability line based on which employees of an agency possessed certain amounts of expertise." *See id.* (Kavanaugh, J., dissenting). Indeed, the *Egan* Court repeatedly referred to the "agency" as a whole in explaining why courts cannot review agency security clearance decisions. *See id.* (Kavanaugh, J., dissenting) (citing seven instances where the *Egan* Court referred to how the "agency," not certain individuals, makes security clearance decisions). In short, the *Rattigan* rule is based on an unconvincing cherry-picking of the *Egan* decision that is at odds with *Egan* itself as well as the *Becerra* decision.

### B.

Plaintiff's ADA claim fares no better than his Title VII and Rehabilitation Act claims. To begin with, the ADA does not even apply to federal agencies. *See* 42 U.S.C. § 12111(5)(B)(i) ("The term 'employer' does not include . . . the United States . . . ."); *see also Hockaday v. Brownlee*, 370 F. Supp. 2d 416, 422 (E.D. Va. 2004) (quotation marks omitted) (stating that the

10

Rehabilitation Act is "the exclusive means by which a plaintiff may raise claims against federal agencies relating to handicap discrimination"), *aff'd Hockaday v. Brownlee*, 119 F. App'x 567 (4th Cir. 2005) (unpublished).   And even if the ADA applied to federal agencies, plaintiff's claim would still fail; it would be barred under *Egan* for precisely the same reason his Title VII and Rehabilitation Act claims fail, namely that a review of the agency's suspension of his security clearance based on his disability (real or perceived) would necessarily implicate the merits of that decision.  *See Perez v. F.B.I.*, 71 F.3d 513, 514 (5th Cir. 1995) ("Because the court would have to examine the legitimacy and the possibly pretextual nature of the FBI's proffered reasons for revoking the employee's security clearance, any Title VII challenge to the revocation would of necessity require some judicial scrutiny of the merits of the revocation decision.") (footnote omitted); *see also Guillot*, 970 F.2d at 1326.  For those reasons, plaintiff's ADA claim must also be dismissed for lack of subject matter jurisdiction.

## C.

Plaintiff's fourth claim is that the agency failed to adhere to a number of regulations when it suspended his security clearance, and in doing so violated his right to due process.  He contends that his due process claim can be reviewed under the Supreme Court's decision in *Webster v. Doe*, which held that a statute giving absolute discretion to the Central Intelligence Agency director to fire employees did not preclude judicial review of an employee's "colorable constitutional claim" against the director.  486 U.S. 592, 603 (1988).

Insofar as plaintiff alleges a constitutional violation, he cannot state a "colorable" due process claim because he had no property interest in his security clearance.  *See Jamil v. Sec'y, Dep't of Defense*, 910 F.2d 1203, 1209 (4th Cir. 1990) (rejecting due process claim arising out of security clearance revocation).  In contrast to his unreviewable constitutional claim, his claim

11

that the agency did not follow its own rules is reviewable,[7] but it fails nonetheless because it is in effect an attempt to avoid *Egan* and because he in fact received the benefit of the procedures he seeks.

To begin with, a close look at plaintiff's allegations indicates that he is trying to do an end-run around *Egan*. In his amended complaint, he cites a laundry list of rules, regulations, and an executive order that the agency allegedly violated. For example, he alleges that the agency violated an executive order prohibiting it from discriminating against him based on his race, color, national origin, and disability, which simply restates his unreviewable Title VII, Rehabilitation Act, and ADA claims. The *Egan* rule is not so easily circumvented. *See Spencer*, 2016 WL 4240376 at *3 (noting that *Egan* serves as a "broad restriction on the subject matter jurisdiction of courts in security clearance disputes.").

Plaintiff's claims are further undermined by the very allegations in his amended complaint. For example, he claims that the agency did not consider the opinion of a competent medical authority when it suspended his security clearance. But he also alleges that Colonel Pinkston had a copy of Dr. Koppel's supplemental letter stating that plaintiff could perform his job when Colonel Pinkston upheld the initial suspension decision. Plaintiff also alleges that the agency violated federal regulations entitling him to: (i) receive notice of the adverse action taken against him, (ii) an opportunity to respond in writing, (iii) a hearing, (iv) a written response, and (v) an opportunity to appeal the government's decision. Yet, his amended complaint alleges facts reflecting that he actually received all of those protections.[8] As a result, plaintiff's own

---

[7] *See Jamil*, 910 F.2d at 1208.

[8] It is worth noting that the MSPB decision upholding plaintiff's suspension stated that it was "undisputed" that the agency gave plaintiff the required procedural protections — written notice

factual allegations further undermine his claim that the agency did not follow proper procedures in suspending his security clearance. *Compare Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) ("Rule 12(b)(6) dismissal is appropriate where the allegations contradict the claim asserted.") (quotation marks omitted).

### D.

Plaintiff's final claim is that the agency violated the Back Pay Act by failing to pay him the money he would have received had his security clearance not been revoked. The Back Pay Act provides that an agency employee who is "found by appropriate authority under applicable law, rule, [or] regulation . . . to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee" is entitled to receive back pay. 5 U.S.C. § 5596(b)(1). In response, the agency contends that plaintiff cannot bring a stand-alone claim under the Back Pay Act because the Civil Service Reform Act of 1978 ("CSRA") precludes him from bringing this claim.

The CSRA "establishe[s] a comprehensive system for reviewing personnel action taken against federal employees," and it "prescribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review." *United States v. Fausto*, 484 U.S. 439, 443, 454 (1988). As relevant here, the CSRA entitled

---

of the charge against him, a reasonable time to respond in writing (and to furnish evidence), an opportunity to be heard, a written decision with the reasons for the suspension, and an appeal to the MSPB. *Kruise v. Army*, No. DC-0752-07-0229-I-1, 2007 WL 933842 (M.S.P.B. Feb. 26, 2007). Indeed, plaintiff did not even contend before the MSPB that he was denied due process. *Id.* As a result, the MSPB concluded that "the agency has proven by preponderant evidence that it provided [plaintiff] with the statutorily-mandated due process to which he was entitled." *Id.* Although that decision has no precedential value, it further supports the conclusion that plaintiff's own allegations undermine his claim that the agency failed to follow the required procedures in suspending him.

plaintiff to appeal the agency's suspension decision to the MSPB, and then to the Federal Circuit. *See* 5 U.S.C. §§ 7512(2), 7513; *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2130–32 (2012).[9] The Back Pay Act states that an "appropriate authority" must find that the employee has suffered an "unwarranted personnel action,"[10] and under the CSRA an appropriate authority is the "agency itself, or the MSPB or the Federal Circuit where those entities have the authority to review the agency's determination." *Fausto*, 484 U.S. at 454. In other words, only one of those "appropriate authorit[ies]," 5 U.S.C. § 5596(b)(1), can award plaintiff back pay. In sum, plaintiff's Back Pay Act claim fails because the agency, the MSPB, and the Federal Circuit are the only appropriate authorities who can award back pay.[11] *See Montalvo v. United States*, 231 Ct. Cl. 980, 982 (Ct. Cl. 1982) (stating that the Back Pay Act "is basically derivative in application," and that it applies only where an "appropriate authority" finds an "unjustified or unwarranted personnel action") (quotation marks omitted).

This conclusion finds firm support in the Federal Circuit's decision in *Read v. United States*, 254 F.3d 1064 (Fed. Cir. 2001), which reached the same conclusion based on a similar set of facts. In that case, the plaintiff was removed from his position with the Federal Aviation Administration ("FAA") after his security clearance was revoked. *Id.* at 1065. Although his

---

[9] He did so; he appealed the agency's decision to the MSPB. Of course, the MSPB could not review the merits of the revocation of plaintiff's security clearance. *See* 5 U.S.C. § 7512(A); *Egan*, 484 U.S. at 530–31. The MSPB could review only whether plaintiff's position required a security clearance, whether the agency had the power to revoke security clearances, whether his clearance was in fact revoked, and whether the agency followed proper procedures. *See Read v. United States*, 254 F.3d 1064, 1065 (Fed. Cir. 2001).

[10] 5 U.S.C. § 5596(b)(1).

[11] Whether plaintiff can now seek back pay before the agency, the MSPB, or the Federal Circuit is neither addressed nor decided here.

security clearance was eventually restored, the FAA refused to give him back pay. *Id.* Read filed a lawsuit under the Back Pay Act in the Court of Federal Claims, which dismissed the case for lack of subject matter jurisdiction on the basis that only the FAA, the MSPB, and the Federal Circuit could award back pay under the Act. *Id.* at 1066. The Federal Circuit affirmed the dismissal of Read's claim for lack of subject matter jurisdiction, and for the same reasons, plaintiff's claim must also be dismissed for lack of subject matter jurisdiction. *See id.* at 1068.

Plaintiff's two arguments to the contrary are meritless. He first argues that implied repeals are disfavored, and that the CSRA did not repeal the Back Pay Act. That argument is nonsensical because it is the Back Pay Act itself that empowers only an "appropriate authority" to award back pay. *See* 5 U.S.C. § 5596(b)(1). The CSRA simply elucidates what an "appropriate authority" is under that statute. *See Elgin*, 132 S. Ct. at 2140 ("[R]einstatement, backpay, and attorney's fees are precisely the kinds of relief that the CSRA empowers the MSPB and the Federal Circuit to provide."). And plaintiff's argument that the CSRA does not preclude his Back Pay Act claim because he embraces the agency's final decision to restore his security clearance, and therefore is not actually *challenging* an adverse employment action, is equally unavailing. Plaintiff is clearly challenging the initial suspension of his security clearance — that suspension caused him to lose his job temporarily and prompted him to file an appeal with the MSPB. Even if he does embrace the agency's final decision to restore his security clearance, there is no doubt that he filed this action in order to challenge the initial suspension of his security clearance. Given that his complaint is filled with allegations that the agency improperly suspended his security clearance, plaintiff's argument that he is not challenging that decision is flatly wrong.

**E.**

The final issue is whether plaintiff's motion to file a second amended complaint should be granted. His proposed second amended complaint does not add any new claims against the agency. Instead, his proposed complaint (i) elaborates on his claim that the officials who recommended the suspension of his security clearance misused his mental health disorder as a "loophole" to obtain the suspension without following normal procedures, (ii) changes the name of the defendant to reflect the current Secretary of the Army, and (iii) corrects the name of the agency psychiatrist who evaluated plaintiff in July 2007.

Given this, plaintiff's motion to amend must be denied because his amended complaint already alleges that he was suspended based on a pretextual loophole. For the reasons stated above, the suspension decision is non-reviewable, which means that his motion must be denied as futile. *See United States ex rel. Ahumada v. NISH*, 756 F.3d 268, 274, 279 (4th Cir. 2014) (holding that the district court properly dismissed a proposed amended complaint as futile where the proposed amendments would not have cured a jurisdictional defect).

**III.**

For the foregoing reasons, plaintiff's complaint must be dismissed for lack of subject matter jurisdiction. Because plaintiff's proposed second amended complaint would not cure the jurisdictional defects with his claims, his motion to amend must also be denied.

An appropriate order will issue.

Alexandria, Virginia
October 12, 2016

T. S. Ellis, III
United States District Judge

16